Providenza DiGIROLAMO, Frank Firicano, Angelo DiGirolamo et al., Libellants,

v.

C. MALONE TRUCKING, INC., Libellee.

No. 61–28.

United States District Court
D. Massachusetts.

Dec. 14, 1962.

Morris Katz, Boston, Mass., for libellants.

William T. Conlan, Ely, Bartlett, Brown & Proctor, Boston, Mass., for libellee.

CAFFREY, District Judge.

Libellants in the instant case are the Owners and the Master of the Fishing Vessel MADONNA, who seek, on behalf of themselves and the crew of the vessel, to recover in a cause of salvage, civil and maritime, from C. Malone Trucking, Inc., owner of the power yacht MISS WALTHAM, Coast Guard Registration MS 1193Y.

On the night of May 26, 1961, at approximately 2200 hours, while the MADONNA was en route from a position off Cashes Ledge to another area of the fishing grounds, she came upon the MISS WALTHAM at a point about sixty miles from the nearest land. The MISS WALTHAM, which was unmanned, was sitting low in the water and drifting. A fairly heavy sea was running, the wind was about 30 miles per hour, and it was drizzling. With some difficulty the crew of the MADONNA managed to put a man aboard the smaller (26 ft.) MISS WALTHAM, put a tow line on her and commenced towing her into port. After an hour and a half the tow line parted in the middle and, again, a man was put aboard the MISS WALTHAM with some difficulty, and the tow line was re-established. After another hour or hour and a half, the tow line parted a second time. Once again a crew member of the MADONNA was put aboard the MISS WALTHAM and this time the tow line was doubled, and the MISS WALTHAM was brought into Boston Harbor without further incident, at about 0600 hours, May 27, 1961. She was made secure and the Coast Guard and the owner of the MISS WALTHAM were notified.

The libellants state that in order to provide the salvage service it was necessary to break up and lose the fishing trip on which the MADONNA was then engaged, and they seek to recover a liberal salvage award.

I find, on the uncontradicted testimony of her Captain, that the MADONNA was worth $35,000. There was testimony that the MISS WALTHAM was purchased by her present owner in 1958 for $6,850, and there was testimony that additional fittings and equipment were added to her, such as radio telephone, fishing gear, and lifesaving equipment. At the time of this incident she was insured under a hull and machinery policy in the amount of $8,000. After the incident she was re-insured under a $5,000 hull and machinery policy. There was also testimony of a marine surveyor to the effect that the net value of the MISS WALTHAM when salvaged was $4,700. I give no weight to the re-insurance in the amount of $5,000, since I consider this a palpably self-serving attempt to create evidence of lower value for the MISS WALTHAM at a time when her corporate owner knew it was confronted with a claim for salvage. Nor do I find the expert testimony persuasive.

I find that at the time of the incident in question the MISS WALTHAM was worth $7,500, and I find that but for the timely intervention of the MADONNA there is a strong probability that the MISS WALTHAM would have foundered. In so finding I have considered the fact that the MISS WALTHAM had already drifted some sixty miles offshore, that she had already shipped a considerable amount of water and was riding low, and that it was raining. Libellee's contention that another fishing boat might have sighted her soon after the libellants did so is pure speculation.

Upon consideration of the degree of danger from which the MISS WALTHAM was rescued, the value of the MISS WALTHAM, the value of the MADONNA, the risk involved to the crew of the MADONNA in effecting the

salvage, the promptitude and skill demonstrated by said crew, and the loss of profit due to the interruption of the fishing trip upon which the MADONNA was embarked, I find that the sum of $1,875 is a reasonable salvage award. Decree shall be entered for the libellants in that amount.